No. 105,693

In the Matter of PAUL C. TERRY, *Respondent.*

(265 P.3d 537)

Opinion filed October 21, 2011.

*Alexander M. Walczak,* Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett,* Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio,* of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Paul C. Terry,* respondent, argued the cause pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Paul C. Terry, of Kansas City, Missouri, an attorney admitted to the practice of law in Kansas in 2004.

On October 14, 2010, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on December 1, 2010. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on December 6, 2010, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.1 (2010 Kan. Ct. R. Annot. 406) (competence); 1.3 (2010 Kan. Ct. R. Annot. 422) (diligence); 1.4(a) (2010 Kan. Ct. R. Annot. 441) (communication); 1.5(d) (2010 Kan. Ct. R. Annot. 458) (fees); 1.15(a) and (d)(2)(v) (2010 Kan. Ct. R. Annot. 505) (safekeeping property and production of trust account records for examination); 1.16(d) (2010 Kan. Ct. R. Annot. 521) (termination of representation); 8.1(b) (2010 Kan. Ct. R. Annot. 594) (failure to respond to lawful demand for information from disciplinary authority); 8.4(c) (2010 Kan. Ct. R. Annot. 603) (engaging in conduct involving misrepresentation); and Kansas Supreme Court Rule 211(b) (2010 Kan. Ct. R. Annot. 327) (failure to file timely answer in disciplinary proceeding).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

### "FINDINGS OF FACT

. . . .

#### "*Attorney License History*

"2. On December 23, 2004, the Kansas Supreme Court granted the Respondent a license to practice law in Kansas.

"3. Thereafter, on October 11, 2006, the Court suspended the Respondent's license for failing to pay the annual registration fee and for failing to pay the late filing continuing education fee. On June 18, 2007, after correcting the deficiencies, the Court reinstated the Respondent's license to practice law.

"4. On October 9, 2007, the Court suspended the Respondent's license for a second time. The Court suspended the Respondent a second time for failing to pay the annual registration fee, for failing to pay the noncompliance continuing legal education fee, and for failing to fulfill the minimum continuing legal education requirements. Sixteen months later, on February 18, 2009, the Court reinstated the Respondent's license to practice law.

"5. On October 18, 2010, the Court suspended the Respondent's license for a third time. The Court suspended the Respondent's license this year for failing to pay the annual registration fee, for failing to fulfill the minimum continuing legal education requirements, and for failing to pay the late filing fee and noncompliance continuing legal education fee. The Respondent's license remains suspended.

"6. The Respondent has never been licensed to practice law in Missouri.

#### "*Representation of Ms. Collins*

"7. On August 26, 2007, the Respondent met Joyce Collins at Sharp's 63rd Street Grill in Kansas City, Missouri. At that time, Ms. Collins sought to hire an attorney to file and prosecute a wrongful termination case against Commerce Bank. Despite his inability to do so, the Respondent agreed to file the case in behalf of Ms. Collins in the Jackson County, Missouri, Circuit Court in Independence, Missouri.

"8. At that time, the Respondent was associated with Neysa L. Day. Also at that time, Ms. Day was a licensed Missouri attorney.

"9. Ms. Collins paid the Respondent $1,000 for the representation. Ms. Collins and the Respondent agreed that the Respondent would bill Ms. Collins at a rate of $100 per hour and that the Respondent would be entitled to one-third of any proceeds recovered. The Respondent agreed to prepare and forward to Ms. Collins a written fee agreement memorializing their agreement. The Respondent never provided Ms. Collins with a written fee agreement.

"10. On August 31, 2007, the Respondent deposited Ms. Collins' check into his law office operating account. The Respondent used the proceeds from Ms.

Collins' check to pay personal expenses, including his home mortgage and car payment before he performed any substantial work on Ms. Collins' case.

"11. On December 26, 2007, a petition was filed in behalf of Ms. Collins. Ms. Day signed the petition as attorney of record for Ms. Collins. However, the Respondent testified that he drafted the petition, Ms. Day edited the petition, and that the Respondent personally filed the petition with the Circuit Court of Jackson County, Missouri. Contrary to Ms. Collins' request, the Respondent filed the case at the Kansas City, Missouri, court rather than the Independence, Missouri, court At no time did the Respondent file a motion for admission *pro hac vice* in Ms. Collins' case. The Respondent never informed Ms. Collins that Ms. Day would be the attorney of record on her case.

"12. On January 4, 2008, the Respondent and Ms. Collins again met at Sharp's 63rd Street Grill. During the meeting, the Respondent informed Ms. Collins that he filed the case on December 26, 2007, and that he needed an additional check for $1,000. Again, the Respondent assured Ms. Collins that he would provide her with a written fee agreement. And, again, the Respondent failed to provide Ms. Collins with a written fee agreement.

"13. Ms. Collins provided the Respondent with another $1,000 check. The Respondent deposited Ms. Collins' second check into his operating account. At the time he deposited it, the account was overdrawn. The Respondent used the proceeds from Ms. Collins' check to pay his personal expenses prior to earning the fees.

"14. On April 23, 2008, a motion for the appointment of a special process server was filed in behalf of Ms. Collins. The court granted the motion. Thereafter, the Respondent did nothing to further the representation of Ms. Collins or to prosecute the case.

"15. Following their meeting on January 4, 2008, from time to time Ms. Collins provided information to the Respondent regarding her representation. However, the Respondent failed to keep in touch with Ms. Collins.

"16. Ms. Collins attempted to contact the Respondent by telephone. However, the Respondent did not return the telephone calls. The Respondent, likewise did not contact the Ms. Collins by letter or *via* electronic mail after February 2, 2008.

"17. On April 17, 2009, the court dismissed Ms. Collins' cause of action without prejudice. The Respondent did not notify Ms. Collins that her case had been dismissed by the court.

"[18]. Throughout the time the Respondent represented Ms. Collins, his license to practice law in Kansas was suspended.

"[19]. In October, 2009, Ms. Collins discovered that her case had been dismissed by the court by viewing case information online. Ms. Collins also discovered that Ms. Day was listed as her attorney of record. Prior to observing Ms. Day's name associated with her case in the online case information, Ms. Collins had never heard of Ms. Day. The Respondent did not inform Ms. Collins that he did not have a license to practice law in Missouri nor did he inform Ms. Collins

that Ms. Day would be the attorney of record in her case. Ms. Collins never met Ms. Day.

"[20]. In November, 2009, the Missouri Supreme Court disbarred Ms. Day.

"[21]. Ms. Collins filed a complaint with the Office of the Missouri Disciplinary Counsel. The Chief Disciplinary Counsel informed Ms. Collins that the Respondent had never been licensed in Missouri and that she should file her complaint with the Disciplinary Administrator in Kansas.

"[22]. On February 11, 2010, Ms. Collins filed a complaint with the Disciplinary Administrator. Thereafter, the Disciplinary Administrator wrote to the Respondent and directed him to file a written response to the complaint within 20 days. The Respondent failed to provide a written response as directed by the Disciplinary Administrator.

"[23]. The Disciplinary Administrator also forwarded Ms. Collins' complaint to the Johnson County Ethics and Grievance Committee for investigation. J. Nick Badgerow, Chairman of the committee, assigned Thomas Mitchelson to investigate the complaint.

"[24]. On March 2, 2010, Mr. Mitchelson wrote to the Respondent and directed him to provide a written response to the complaint. Additionally, Mr. Mitchelson directed the Respondent to contact him to schedule an interview. The Respondent failed to provide a written response to the complaint and also failed to contact Mr. Mitchelson to schedule an interview.

"[25]. In May, 2010, Mr. Mitchelson again wrote to the Respondent and directed him to provide a written response to the complaint and contact him to schedule an interview. The Respondent contacted Mr. Mitchelson and scheduled an interview. After several continuances of the schedule[d] interview, on June 9, 2010, the Respondent met with Mr. Mitchelson.

"[26]. The Respondent informed Mr. Mitchelson that he deposited Ms. Collins' first check into his attorney trust account. The Respondent informed Mr. Mitchelson that he was unsure whether he deposited Ms. Collins' second check into his attorney trust account or in his operating account. The Respondent informed Mr. Mitchelson that he did not have a written fee agreement with Ms. Collins.

"[27]. Following his interview with Mr. Mitchelson, the Respondent provided a written response to the complaint.

"[28]. Mr. Mitchelson requested that the Respondent provide his attorney trust account records showing the deposit of Ms. Collins' checks and the disbursements of the deposits. The Respondent did not provide Mr. Mitchelson with any attorney trust account records.

"[29]. On September 15, 2010, the Disciplinary Administrator issued a subpoena to the Respondent, requiring the Respondent to produce copies of all of his attorney trust account records required to be maintained. On September 21, 2010, Terry Morgan, special investigator for the Disciplinary Administrator, served the subpoena on the Respondent. The subpoena required the Respondent to produce the records by September 28, 2010. The Respondent failed to provide

any attorney trust account records. Additionally, the Respondent failed to provide the Disciplinary Administrator with any explanation as to why he failed to comply with the subpoena.

"[30]. At the hearing on this matter, the Respondent testified that he could not comply with the subpoena because his bank had recently merged with another bank and the records were no longer available.

"[31]. On September 15, 2010, the Disciplinary Administrator also issued a subpoena to the Respondent's bank, Metcalf Bank. The subpoena was served that same day. On September 24, 2010, the bank complied with the subpoena and provided the Disciplinary Administrator's office with a copy of the Respondent's bank records.

"[32]. On October 14, 2010, the Disciplinary Administrator filed the Formal Complaint in this case. The Respondent failed to file a timely Answer to the Formal Complaint. On December 1, 2010, five days prior to the hearing on the Formal Complaint, John J. Ambrosio entered his appearance in behalf of the Respondent and filed an Answer to the Formal Complaint.

## "CONCLUSIONS OF LAW

"1. In his Answer to the Formal Complaint, the Respondent admitted that he violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5(d), KRPC 1.15(a), KRPC 1.15(d)(2)(v), KRPC 1.16(d), KRPC 8.1(b), and KRPC 8.4(c). Additionally, based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated Kan. Sup. Ct. R. 211(b) as detailed below:

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent was not competent to represent Ms. Collins or anyone else in an employment discrimination case. Having no experience in that area of law, the Respondent failed to represent Ms. Collins with the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. Attorneys must act with reasonable diligence and promptness in representing their clients. See KRPC 1.3. After filing the petition, the Respondent did little to no work on Ms. Collins' case. He failed to represent her with the diligence and promptness that the rules require. Because the Respondent failed to act with reasonable diligence and promptness in representing Ms. Collins, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"4. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to respond to Ms. Collins' requests for information and provide Ms. Collins with current information regarding the representation. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. Contingent fee agreements must be in writing. KRPC 1.5(d) provides the requirement in this regard:

'A fee may be contingent on the outcome of the matter for which the service is rendered, . . . A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, and the litigation and other expenses to be deducted from the recovery. . . .'

The Respondent entered into a contingency fee agreement with Ms. Collins but failed to reduce the agreement to writing. Thus, the Hearing Panel concludes that the Respondent violated KRPC 1.5(d).

"6. Lawyers must properly safeguard their clients' property. KRPC 1.15(a) specifically provides that:

'(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

In this case, the Respondent failed to properly safeguard Ms. Collins' property. First, the Respondent did not deposit the unearned fees into his attorney trust account. Rather, the Respondent deposited Ms. Collins' unearned fees into his operating account. Further, the Respondent used Ms. Collins unearned fees on personal expenses prior to earning it. Accordingly, the Hearing Panel concludes that the Respondent failed to properly safeguard Ms. Collins' property, in violation of KRPC 1.15(a).

"7. Attorneys must maintain attorney trust account records and produce the records upon request by the Disciplinary Administrator. KRPC 1.15(d)(2)(v) provides that '[t]he lawyer shall: . . . [p]roduce all trust account records for examination by the Disciplinary Administrator upon request of the Disciplinary Administrator.' The Respondent failed to produce his attorney trust account records as requested by the Disciplinary Administrator. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 1.15(d)(2)(v).

"8. KRPC 1.16 also requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

To date, the Respondent has not refunded Ms. Collins' unearned fees, in violation of KRPC 1.16(d). As such, the Hearing Panel concludes that the Respondent violated KRPC 1.16(d).

"9. Lawyers must cooperate in disciplinary investigations. KRPC 8.1(b) provides the requirement in this regard. '[A] lawyer in connection with a . . . disciplinary matter, shall not: . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority, . . .' The Respondent failed to provide his trust account records as requested by Mr. Mitchelson and as required by the subpoena. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.1(b).

"10. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The Respondent engaged in conduct that involved deceit by omission. The Respondent engaged in deceitful conduct when he failed to inform Ms. Collins that he was not licensed in Missouri, when he failed to inform Ms. Collins that his license to practice law in Kansas was suspended, when he failed to inform Ms. Collins that Ms. Day would be the attorney of record in his case, and when he failed to inform Ms. Collins that her case had been dismissed. The Respondent also engaged in dishonest conduct when he informed Mr. Mitchelson that he deposited Ms. Collins' first check into his attorney trust account. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c).

"11. The Kansas Supreme Court Rules require attorneys to file Answers to Formal Complaints. Kan. Sup. Ct. R. 211(b) provides the requirement:

'The Respondent shall serve an answer upon the Disciplinary Administrator within twenty days after the service of the complaint unless such time is extended by the Disciplinary Administrator or the hearing panel.'

Kan. Sup. Ct. R. 211(b). In this case, the Respondent violated Kan. Sup. Ct. R. 211(b) by failing to file a timely written Answer to the Formal Complaint. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 211(b).

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent and diligent representation and adequate communication. Additionally, the Respondent violated his duty to his client to properly safeguard his client's property. Finally, the Respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"*Mental State*. The Respondent knowingly and intentionally violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused actual injury to Ms. Collins.

"*Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Dishonest or Selfish Motive*. The Respondent's misconduct was motivated by both dishonesty and selfishness. The Respondent was deceitful in dealing with Ms. Collins. He failed to inform her that he was not licensed in Missouri, he failed to inform her that his Kansas license to practice law was suspended, he failed to inform her that Ms. Day would be the attorney of record on her case, and he failed to inform her when her case was dismissed. By spending Ms. Collins' attorney fees on personal expenses prior to earning the fees and by failing to return the unearned fees to Ms. Collins, the Respondent acted selfishly.

"*A Pattern of Misconduct*. The Respondent engaged in a pattern of misconduct in this case. Throughout the period of time the Respondent represented Ms. Collins, his license to practice law in Kansas was suspended. The Respondent's misconduct occurred over a period of time and included engaging in the same misconduct repeatedly.

"*Multiple Offenses*. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 1.5(d), KRPC 1.15(a), KRPC 1.15(d)(2)(v), KRPC 1.16(d), KRPC 8.1(b), KRPC 8.4(c), and Kan. Sup. Ct. R. 211(b). Accordingly, the Hearing Panel concludes that the Respondent committed multiple offenses.

"*Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process*. The Respondent engaged in bad faith obstruction of the disciplinary proceeding by failing to timely provide a written response to the initial complaint, by failing to timely schedule an interview with Mr. Mitchelson, by failing to provide Mr. Mitchelson with copies of his attorney trust account records, by failing to provide the attorney trust account records pursuant to the subpoena, and by failing to timely file an Answer to the Formal Complaint. Further, the Respondent repeatedly failed to comply with annual registration rules.

"*Vulnerability of Victim*. Ms. Collins was vulnerable to the Respondent's misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Prior Disciplinary Record*. The Respondent has not previously been disciplined.

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*. The Respondent fully cooperated during the disciplinary hear-

ing and acknowledged his misconduct and the violations of the Kansas Rules of Professional Conduct.

"*Inexperience in the Practice of Law*. The Respondent is inexperienced in the practice of law, having been admitted to the practice in 2004.

"*Remorse*. During the hearing on the Formal Complaint, the Respondent expressed genuine remorse for having engaged in the misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.11   Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

'4.41   Disbarment is generally appropriate when:

. . . .

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

'5.11   Disbarment is generally appropriate when:

. . . .

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that serious adversely reflects on the lawyer's fitness to practice.'

## "RECOMMENDATION

"The Disciplinary Administrator recommended that the Respondent be disbarred. Counsel for the Respondent recommended that the Respondent be required to serve a short, definite suspension and that the Respondent's practice be supervised upon reinstatement.

"The Respondent does not appear to fully appreciate the significance of his misconduct. Ms. Collins retained the Respondent to perform a service. The Respondent accepted the representation and the attorney fee and did not perform the service. The Respondent failed to inform her that her case had been dismissed. The Respondent could have informed Ms. Collins that the case had been dismissed at a time when she could have retained new counsel to pursue the litigation. Because he did not, Ms. Collins lost not only her $2,000 in attorney fees but also her cause of action.

"Additionally, the Respondent basically ignored the Disciplinary Administrator's office. He failed to provide a written response to the initial complaint, he failed to timely contact the investigator to schedule an interview, he failed to provide a copy of the trust account records when requested to do so by Mr. Mitchelson, he failed to provide a copy of the trust account records pursuant to the subpoena, and he failed to file a timely Answer to the Formal Complaint.

"Finally, the Respondent has repeatedly failed to comply with the annual registration rules resulting [in] the repeated suspension of his law license. It does not appear that the Respondent ever complied with the suspension orders. Rather, it

appears that the Respondent continuously practiced law when his license was suspended.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be disbarred.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent filed no exceptions to the hearing panel's final hearing report. As such, the findings of fact are deemed admitted. See Supreme Court Rule 212(c), (d) (2010 Kan. Ct. R. Annot. 344). We conclude the hearing panel's findings are supported by clear and convincing evidence. Thus, the only issue before us is the appropriate discipline.

At the hearing before this court, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent be disbarred. The respondent argued against disbarment and requested an indefinite suspension with supervised probation upon reinstatement.

We decline the respondent's request for suspension and subsequent probation. As the hearing panel noted, the respondent's license to practice law in this state has been suspended three times for failure to timely pay the annual registration fee and continuing legal education late fees; in fact, his license has been suspended since October 18, 2010. When these offenses are considered along with the respondent's multiple offenses in this case, including vi-

olations of KRPC 1.1; 1.3; 1.4(a); 1.5(d); 1.15(a) and (d)(2)(v); 1.16(d); 8.1(b); 8.4(c); and Kansas Supreme Court Rule 211(b), we find disbarment is the appropriate discipline.

### CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Paul C. Terry be disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2010 Kan. Ct. R. Annot. 276).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2010 Kan. Ct. R. Annot. 370).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas reports.